**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Application of<br><br>FourWorld Event Opportunities, LP,<br><br>Petitioner, for an Order Pursuant to 28 U.S.C. § 1782<br>to Conduct Discovery for Use in a Foreign Proceeding. | Case No. 25- |

**MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN A <u>FOREIGN PROCEEDING</u>**

Pallas Partners (US) LLP
Duane L. Loft
Brianna Hills Simopoulos
Mark C. Davies
Ashley Mullen
75 Rockefeller Plaza
New York, NY 10001
Telephone: (212) 970-2300
Duane.Loft@pallasllp.com
Brianna.Simopoulos@pallasllp.com
Mark.Davies@pallasllp.com
Ashley.Mullen@pallasllp.com

*Attorneys for Petitioner*

## **<u>TABLE OF CONTENTS</u>**

PRELIMINARY STATEMENT..................................................................................... 1

FACTUAL BACKGROUND ...................................................................................... 3

    A.    Parties to the Appraisal Proceeding and the Merger ................................ 3

    B.    The Appraisal Proceeding ....................................................................... 6

    C.    Respondents and the Discovery Sought................................................... 7

ARGUMENT ............................................................................................................. 8

I.    THE APPLICATION SATISFIES THE THREE STATUTORY REQUIREMENTS OF 28 U.S.C. § 1782.................................................................................................... 9

    A.    Respondents Are "Found in" This District. ............................................ 9

    B.    The Discovery Sought Is "For Use" in the Appraisal Proceeding. ....................... 14

    C.    Petitioner Is An "Interested Person." .................................................... 16

II.    THE *INTEL* FACTORS WEIGH IN FAVOR OF GRANTING DISCOVERY. ............... 16

    A.    *Intel* I: Respondents Are Non-Participants in the Appraisal Proceeding. ............. 16

    B.    *Intel* II: The Bermuda Court Will Be Receptive to the Requested Discovery. ..... 18

    C.    *Intel* III: Petitioner Is Not Circumventing Foreign Proof-Gathering Restrictions.20

    D.    *Intel* IV: The Subpoena Is Not Unduly Burdensome. ........................................... 21

CONCLUSION..................................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

*Am. Patriot Ins. Agency, Inc. v. Hendricks*,
    No. 10-CV-00985, ECF No. 8 (N.D. Ill. Feb. 19, 2010)........................................................ 20

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
    673 F.3d 76 (2d Cir. 2012) ................................................................................................... 15

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)............................................................................................................... 9

*Euromepa, S.A. v. R. Esmerian, Inc.*,
    51 F.3d 1095 (2d Cir. 1995) ................................................................................................. 18

*FourWorld Event Opportunities, LP v. Dodds*,
    No. 1:22-mc-00018-TNM, ECF No. 8 (D.D.C. Feb. 14, 2022) ............................................ 15

*In re Accent Delight Int'l Ltd.*,
    869 F.3d 121 (2d Cir. 2017) ................................................................................................... 8

*In re Accent Delight*,
    No. 1:16-mc-125 (JMF), 2018 WL 2849724 (S.D.N.Y. June 11, 2018)................................. 23

*In re Aegean Marine Petroleum Network, Inc., Securities Litigation*,
    529 F. Supp. 3d 111 (S.D.N.Y 2021) .............................................................................. 12, 13

*In re Al-Attabi*,
    No. 21-MC-207 (VSB) (RWL), 2022 WL 229784 (S.D.N.Y. Jan. 26, 2022)........................ 19

*In re Alpine Partners (BVI) L.P.*,
    635 F. Supp. 3d 900 (N.D. Cal. 2022) ................................................................................. 15

*In re Application of Auto-Guadeloupe Investissement S.A.*,
    2012 WL 4841945 (S.D.N.Y. Oct. 10, 2012)........................................................................ 17

*In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*,
    No. M19-88 (BSJ), 2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006) ........................................ 22

*In re Application of Hill*,
    No. M19-117 (RJH), 2005 WL 1330769 (S.D.N.Y. June 3, 2005)........................................ 20

*In re Application of Oasis Core Invs. Fund Ltd.*,
    No. 23-mc-402 (SHS), 2024 WL 472984 (S.D.N.Y. Feb. 7, 2024) ....................................... 21

*In re Bayer AG*,
    146 F.3d 188 (3d Cir. 1998) ................................................................................................. 21

*In re Belparts Grp., N.V.*,
    No. 3:21-MC-0062, 2021 WL 4942134 (D. Conn. Oct. 22, 2021) ....................................... 17

*In re del Valle Ruiz*,
    939 F.3d 520 (2d Cir. 2019) ................................................................................. passim

*In re Evenstar Master Fund SPC*,
    No. 20-MC-418, 2021 WL 3829991 (S.D.N.Y. Aug. 27, 2021) ........................................... 17

*In re Evenstar Master Fund SPC*,
    No. 20-MC-418 (CS) (JCM), 2021 WL 5498283 (S.D.N.Y. Nov. 23, 2021) ....................... 17

*In re Ex Parte Application of Porsche Automobil Holding SE*,
    2016 WL 702327 (S.D.N.Y. Feb. 18, 2016) ........................................................... 8, 17, 19, 23

*In re FourWorld Capital Management LLC*,
    No. 23-1460-GBW, 2024 WL 1637400 (D. Del. Apr. 16, 2024) ......................................... 18

*In re FourWorld Event Opportunities, LP*,
    No. 21-mc-00283-RGS, ECF No. 6 (D. Del. July 29, 2021) ................................................. 15

*In re FourWorld Event Opportunities, LP*,
    No. 21-mc-00543-PKC, ECF No. 8 (S.D.N.Y. Aug. 8, 2021) ............................................... 15

*In re Kidd*,
    No. 3:20-CV-00800, 2020 WL 5594122 (D. Conn. Sept. 18, 2020) ..................................... 17

*In re Kuwait Ports Authority*,
    No. 1:20-MC-00046-ALC, 2021 WL 5909999 (S.D.N.Y. Dec. 13, 2021) ..................... 14, 23

*In re Mother's Milk, Inc.*,
    No. 5:20-mc-00004-M, 2020 WL 2514315 (S.D.N.Y. May 15, 2020) ................................. 23

*In re Oasis Core Investments Fund Ltd.*,
    2024 WL 472984 (S.D.N.Y. Feb. 7, 2024) ......................................................................... 22

*In re Polygon Global Partners LLP*,
    21 Misc. 364 (ER), 2021 WL 2117397 (S.D.N.Y. May 25, 2021) ................................. 17, 18

*In re Refineria de Cartagena S.A.S.*,
    No. 23 MISC. 455 (JPC), 2024 WL 95056 (S.D.N.Y. Jan. 8, 2024) ..................................... 18

*In re Term Commodities Cotton Futures Litig.*,
    No. 12 CIV 5126 ALC KNF, 2013 WL 9815198 (S.D.N.Y. Dec. 20, 2013), *on
    reconsideration in part*, 2014 WL 5014235 (S.D.N.Y. Sept. 30, 2014) ................................. 10

*In re Top Matrix Holdings Ltd.*,
    2020 WL 248716 (S.D.N.Y. Jan. 16, 2020) ....................................................................... 17

*In re Winston Wen-Young for Assistance before a Foreign Tribunal*,
　　No. 21-cv-8627, ECF No. 19 (D.N.J. June 15, 2021) ............................................................. 19

*Intel Corp. v. Advanced Micro Devices, Inc.*,
　　542 U.S. 241 (2004) ........................................................................................................ passim

*Letter of Request for Examination of Witness Out of Jurisdiction, Am. Patriot Ins. Agency, Inc. v.*
　　*Hendricks*,
　　No. 10-CV-00985, ECF No. 1-3 (N.D. Ill. Feb. 12, 2010) ...................................................... 20

*Marubeni Am. Corp. v. LBA Y.K.*,
　　335 Fed. App'x 95 (2d Cir. June 17, 2009) ............................................................................. 8

*Matter of Degens*,
　　No. 20-MC-237 (JGK) (RWL), 2020 WL 4252725 (S.D.N.Y. July 24, 2020) ...................... 22

*Mees v. Buiter*,
　　793 F.3d 291 (2d Cir. 2015) .......................................................................................... passim

*Oasis Focus Fund LP v. New Wave MMXV Ltd.*,
　　No. 22-mc-80291-TLT, ECF No. 42 (Order) (N.D. Cal. March 8, 2023) .............................. 13

*Pfaff v. Deutsche Bank AG*,
　　No. 20-mc-0025-KPF, 2020 WL 3994824 (S.D.N.Y. July 14, 2020) ......................... 11, 12, 13

*Sampedro v. Silver Point Cap., L.P.*,
　　818 F. App'x 14 (2d Cir. 2020), *as amended* (June 5, 2020) ................................................. 14

*Sergeeva v. Tripleton Int'l Ltd.*,
　　834 F.3d 1194 (11th Cir. 2016) ............................................................................................. 14

*U.S. Titan, Inc. v. Guangzhou Zhen Hua Ship. Co., Ltd.*,
　　241 F.3d 135 (2d Cir. 2001) ....................................................................................... 9, 10, 11

*Union Fenosa Gas, S.A. v. Depository Tr. Co.*,
　　20 Misc. 188 (PAE), 2020 WL 2793055 (S.D.N.Y. May 29, 2020) ................................. 14, 23

## **STATUTES**

28 U.S.C. § 1782 ................................................................................................................. passim

## **RULES**

Rule 30(b)(6) ............................................................................................................................. 23

FourWorld Event Opportunities, LP ("Petitioner") respectfully submits this application pursuant to 28 U.S.C. § 1782 seeking an order: (a) granting Petitioner leave to serve subpoenas on Brookfield Wealth Solutions Ltd. ("Brookfield"), formerly known as Brookfield Reinsurance Ltd.,[1] and Mr. Lorenzo Lorilla, the Chief Investment Officer of Brookfield (together, "Respondents"); (b) directing Respondents to produce the materials described in the Subpoena within thirty days of service of the Subpoena; (c) directing Respondents to sit for depositions within a reasonable time after the completion of document production; and (d) granting any and all other relief the Court deems just and proper.

## PRELIMINARY STATEMENT

Petitioner respectfully submits this Application pursuant to 28 U.S.C. § 1782 (the "Application") to take discovery from Respondents, both found in this District, for use in a shareholder appraisal proceeding (the "Appraisal Proceeding") pending before the Supreme Court of Bermuda (the "Bermuda Court"). In the Appraisal Proceeding, Petitioner (along with other dissenting shareholders) seeks a determination of the fair value of its shares in Argo Group International Holdings, Ltd. ("Argo" or the "Company"), a Bermuda company that was delisted from the New York Stock Exchange ("NYSE") and taken private on November 16, 2023 (the "Merger"), resulting in the forcible purchase and cancellation of Petitioner's shares.

Respondent Brookfield was the buyer in the Merger and Respondent Lorilla was, and remains, its Chief Investment Officer. Through this Application, Petitioner seeks discovery from Respondents relating to the fairness of the Merger Price and the process that led to the Merger— core issues in the Appraisal Proceeding.

Petitioner's Application meets all of the statutory requirements of Section 1782:

---

[1] Brookfield Reinsurance Ltd. changed its name to Brookfield Wealth Solutions Ltd., effective September 4, 2024. *See* Declaration of Duane L. Loft ("Loft Decl."), Exs. 5–6.

(i) Respondents are "found" in this District because Brookfield participated in the Merger, which involved de-listing the Company from the NYSE, and Lorilla resides in this District; (ii) the Requested Discovery is "for use" in a foreign proceeding, namely the Appraisal Proceeding; and (iii) Petitioner, which is a party to the Appraisal Proceeding, is an "interested person" under the statute. In addition, each of the Supreme Court's factors that guide this Court's exercise of discretion under Section 1782 weighs decisively in favor of granting Petitioner's Application. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004).

*First*, Petitioner seeks discovery from a "nonparticipant" in the foreign action. *Id.* Neither Respondent is a party to the Appraisal Proceeding.

*Second*, "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance" all support granting Petitioner's Application. *Id.* There is no indication, let alone the required "authoritative proof," suggesting that the Bermuda Court might be unreceptive to Section 1782 assistance. *Id.* To the contrary, several U.S. courts, including a court in this District, have granted Section 1782 applications for discovery in aid of appraisal proceedings in Bermuda. As established in the declaration of Petitioner's Bermuda counsel, *see* Declaration of Delroy Duncan ("Duncan Decl."), the Bermuda Court will accept and consider any relevant evidence submitted by the parties, so long as it is lawfully obtained through Section 1782 and otherwise admissible. In the Appraisal Proceeding, the Bermuda Court will consider all facts and matters that may have a bearing on the determination of fair value. As explained in the Duncan Declaration, where, as here, the parties dispute whether the Merger Price represents the fair value of the Company's shares, the Bermuda Court's inquiry often involves a consideration of evidence relating to whether the process that led to the transaction was fair. Duncan Decl. ¶¶ 20–25.

*Third*, the Application is not an improper attempt to circumvent any foreign discovery restrictions on proof gathering. *Intel*, 542 U.S. at 264. The requested discovery does not implicate any privilege or special protection that would make it improper under Bermuda law.

*Fourth*, the Requested Discovery is not unduly intrusive or burdensome. *Id.* To the contrary, the subpoena is narrowly tailored to seek evidence and information addressing the fair value of Petitioner's shares in the Company and the process that the Company undertook to negotiate and approve the Merger. As explained in the accompanying Duncan Declaration, such evidence is directly relevant to the core issues in the Appraisal Proceeding.

*Finally*, the Court should exercise its discretion to order production of any responsive discovery that Respondents have in their possession, custody, or control, regardless of the physical location of that evidence. Section 1782 is extraterritorial in reach, and courts commonly order discovery of evidence located abroad, particularly where, as here, the discovery is from a third party not subject to the jurisdiction of the foreign court.

## FACTUAL BACKGROUND

### A.    Parties to the Appraisal Proceeding and the Merger

Petitioner is an investment fund that invested in Argo and is a party to the Appraisal Proceeding. Loft Decl., Ex. 3 (the "Proxy Statement") at 1. Petitioner owned shares in Argo immediately before the Merger. Argo is a U.S.-focused insurance underwriter organized under Bermuda law. *Id.* Prior to its delisting as part of the Merger, the Company had been listed on the New York Stock Exchange under the symbol "ARGO" since May 2018. *Id.*

On March 20, 2023, the Company filed a proxy statement with the U.S. Securities and Exchange Commission announcing that it had entered into a Merger Agreement with Brookfield under which, if approved by the shareholders, the Company would be taken private and the shares of minority shareholders, including Petitioner, would be compulsorily purchased at a price of $30

per share (the "Merger Price").  Proxy Statement at 1–2.  Brookfield, the Buyer, is a Bermuda exempted company "focused on providing capital-based solutions to the insurance industry."  *Id.* at 1.

According to the Proxy Statement, the Company began to consider "the possibility of initiating a review of potential strategic alternatives, including a sale of Argo" in March 2022. Proxy Statement at 24.  In April 2022, the Company engaged Goldman Sachs & Co. LLC ("Goldman Sachs") as its financial advisor "in connection with the strategic review process, including the possible sale of all or a portion of Argo."  *Id.* at 25.  In June 2022, Argo's Board of Directors (the "Board") formed a strategic review committee to consider potential transactions and make recommendations to the Board.  *Id.* at 25-26.  On August 4, 2022, the Board appointed J. Daniel Plants, the founder and Chief Investment Officer of Voce Capital, as a non-employee, independent director of the Company.  *Id.* at 26.  Mr. Plants was also appointed as the chair of the strategic review committee in September 2022.  *Id.*

Between April 2022 and February 8, 2023, the Board and the strategic review committee met over 40 times in connection with the strategic review process and the consideration of a potential transaction.  Proxy Statement at 24.  In November 2022, the Company received proposals from five potential buyers, including an initial offer from Brookfield to acquire the Company at a price of $30 per common share in cash.  *Id.* at 27–28.  Subsequently, from November 10 to November 18, 2022, the Company held management presentations with Brookfield and four of the other potential buyers at the New York City offices of Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"), the Company's outside legal counsel.  *Id.* at 28.  Later that same month, representatives of Goldman Sachs, acting at the direction of the Company, distributed second round process letters and draft merger agreements prepared by Skadden to Brookfield and three

other potential buyers. *Id.* Brookfield conducted due diligence on the Company through December 2022. *Id.*

In late December 2022, Brookfield submitted a revised proposal to acquire the Company at a price of $30.50 per common share in cash, with the condition that the Company grant it a five-week exclusivity period to negotiate and finalize the terms of the transaction. Proxy Statement at 29. The Board determined not to grant exclusivity to Brookfield at that time. *Id.* On January 18, 2023, Brookfield submitted a second revised proposal to representatives of Goldman Sachs to acquire the Company at a price of $29.50 per common share in cash. *Id.* Brookfield conditioned this revised proposal on (i) Voce Capital, a significant shareholder of the Company, agreeing to enter into a voting agreement to vote its shares in favor of the Merger, and (ii) the Company granting a two-week exclusivity period. *Id.* Brookfield also submitted a revised draft of the merger agreement and a draft exclusivity agreement to Skadden through its outside legal counsel, Debevoise & Plimpton LLP ("Debevoise"). *Id.* The Company, through Goldman Sachs, made a counterproposal to Brookfield for a price of $31.50 per common share in cash and an exclusivity agreement. *Id.* at 30. Skadden sent a revised draft of the merger agreement on behalf of the Company to Debevoise. *Id.*

In the course of subsequent negotiations and communications between Brookfield and representatives of Goldman Sachs, acting on behalf of the Company, Brookfield and Argo entered into an exclusivity agreement and, from January 24 until February 8, 2023, began negotiations to finalize the terms of the Merger and exchange additional due diligence information. Proxy Statement at 30–31. During this period, representatives of Debevoise, Skadden, and Schulte Roth & Zabel LLP ("Schulte"), outside legal counsel to Voce Capital, negotiated and exchanged drafts of the voting agreement and merger agreement. *Id.* Brookfield and Goldman Sachs representatives

also communicated via email to exchange additional outstanding diligence items needed for finalization of the Merger.  *Id.*

On February 3, 2023, Brookfield submitted a third revised offer to Goldman Sachs representatives for a price of $29 per common share in cash, and during the same discussion, increased its offer price to $30.00 per common share in cash, indicating that it was not willing to increase its offer price further.  Proxy Statement at 31.  Representatives of the Company, Brookfield, and Voce Capital met on February 7, 2023 to discuss the remaining open points with respect to the Merger Agreement and voting agreement.  *Id.* at 32.  Goldman Sachs issued a fairness opinion the next day, opining that Brookfield's $30 per share offer price was "fair from a financial point of view" and presenting its analysis.  *Id.* at Annex B ("Fairness Opinion").

Purportedly relying on the Fairness Opinion, on February 8, 2023, the Company's Board voted to approve the Merger with Brookfield at a price of $30 per share, the same price as Brookfield's original offer.  *Id.* at 32–34.  Concurrently with the Merger Agreement, Brookfield and Voce Capital entered into a voting agreement under which Voce Capital agreed to vote in favor of the Merger with Brookfield and against any action or agreement that would impede the consummation of the Merger.  *Id.* at 10–11, 32.  The Merger was subsequently approved by the shareholders at a shareholder meeting on April 19, 2023 and closed on November 16, 2023.

### B.    The Appraisal Proceeding

On April 19, 2023, Petitioner and other dissenting shareholders initiated the Appraisal Proceeding in Bermuda, requesting that the Bermuda Court determine the fair value of their shares in the Company under Section 106(6) of the Bermuda Companies Act of 1981.  Duncan Decl. ¶ 11; *id.*, Exs. 1–6.  In the Appraisal Proceeding, Petitioner and other dissenting shareholders will assert that the Merger Price undervalued the Company, and that the Merger was unfair to Petitioner and other minority shareholders.  *Id.* ¶ 12.  The Bermuda Court will be charged with determining

the fair value of the dissenting shareholders' shares. This process involves examining both the valuation of the Company and the fairness of the process that led to the approval of the Merger. *Id.* ¶¶ 21, 25. Through this process, as described in the Duncan Declaration, Petitioner and the other dissenting shareholders will have the opportunity to present documentary evidence, deposition testimony, and legal arguments to the Bermuda Court. *Id.* ¶¶ 20–38. As of the date of filing the instant application, the parties to the Appraisal Proceeding are negotiating the terms of a "directions order" that will set the parameters for discovery in the Appraisal Proceeding and the general schedule for the case. *Id.* ¶ 19.[2]

### C.    Respondents and the Discovery Sought

Through this Application, Petitioner seeks discovery from Respondents on issues relevant to the Appraisal Proceeding, including: (i) the fairness of, and the process to reach, the Merger Price, including negotiations between Brookfield and the Company; (ii) the process that the Brookfield undertook to formulate the Merger Price; (iii) the consideration of the Merger by the Company and its Board; (iv) any alternative transactions or bids to acquire the Company; (v) the voting agreement entered into between Brookfield and Voce Capital; and (vii) documents pertaining to the Company's valuation, including any material non-public information, valuations, models, and any forecasts of the Company's future performance (the "Requested Discovery"). Throughout the relevant time period, Mr. Lorilla acted as the Chief Investment Officer for Brookfield and resided in New York, and continues to do so. *See* Loft Decl. ¶ 10; *id.* Exs. 4, 7, 8.

The Requested Discovery will significantly assist the Bermuda Court in evaluating the Merger and the fair value of Petitioner's shares in the Company. *See* Duncan Decl. ¶¶ 41–42.

---

[2] The Bermuda Court recently issued a ruling denying the Company's application for a stay pending the appeal of a decision of the Bermuda Supreme Court in a separate proceeding to the Privy Council. *Id.* ¶ 18. Accordingly, discovery in the Appraisal Proceeding is now proceeding and the parties in the Appraisal Proceeding are negotiating a draft Directions Order. *Id.* ¶ 19.

## ARGUMENT

Section 1782 of Title 28 of the United States Code permits United States District Courts to grant discovery for use in a pending foreign proceeding.  *Intel*, 542 U.S. at 246.  A Section 1782 application must satisfy three statutory requirements: (1) the discovery is sought from someone who resides or is found within the district; (2) the discovery is for use in a foreign proceeding before a foreign tribunal; and (3) the applicant is an "interested person."  *See In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 128 (2d Cir. 2017).  If these statutory requirements are met, the court then considers four discretionary "*Intel*" factors in deciding whether to grant a Section 1782 application: (1) whether the person from whom discovery is sought is a "nonparticipant in the matter arising abroad"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome."  *Intel*, 542 U.S. at 264–65.

In exercising this discretion, courts are often mindful of "the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts."  *Mees v. Buiter*, 793 F.3d 291, 297–98 (2d Cir. 2015).  None of the discretionary factors should be given more weight than the others, and no one factor is dispositive.  *See Marubeni Am. Corp. v. LBA Y.K.*, 335 F. App'x 95, 97 (2d Cir. 2009).  Moreover, "[a]s a general matter, the Supreme Court and the Second Circuit have made clear that district courts are to take a hospitable view of applications to compel the production of evidence by persons found or residing in the United States for use in foreign litigation."  *In re Porsche Automobil Holding SE*, No. 15-mc-417 (LAK), 2016 WL 702327, at *2 (S.D.N.Y. Feb. 18, 2016).

## I.    THE APPLICATION SATISFIES THE THREE STATUTORY REQUIREMENTS OF 28 U.S.C. § 1782.

Petitioner satisfies the three threshold statutory requirements of Section 1782.

### A.    Respondents Are "Found in" This District.

In the Second Circuit, the phrase "found in" for purposes of Section 1782 is coextensive with specific personal jurisdiction under the Due Process Clause. *In re del Valle Ruiz*, 939 F.3d 520, 527 (2d Cir. 2019) (holding that "resides or is found" in Section 1782 "extends to the limits of personal jurisdiction consistent with due process," not merely general personal jurisdiction).

Brookfield's participation in the Merger, which involved negotiations that took place in New York and were directed at New York, establishes specific personal jurisdiction over Brookfield such that Brookfield is "found in" this District for purposes of Section 1782.  As to Mr. Lorilla, this Court has general personal jurisdiction over him by virtue of his residence and employment in New York City.  *See* Loft Decl. ¶ 10; *id.* Exs. 4, 7.

As to Brookfield, the test to establish specific personal jurisdiction requires that (1) the respondent purposefully directed his or her activities at the forum state, and (2) the litigation arises out of or relates to those activities.  *In re del Valle Ruiz*, 939 F.3d at 529.   In general, to establish specific personal jurisdiction, "the required minimum contacts exist where the [party] 'purposefully availed' itself of the privilege of doing business in the forum and could foresee being 'haled into court' there."  *U.S. Titan, Inc. v. Guangzhou Zhen Hua Ship. Co., Ltd.*, 241 F.3d 135, 152 (2d Cir. 2001); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) ("So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.").  The Second Circuit, addressing the question of what activities of a foreign corporation satisfy the minimum contacts test, listed the following factors: "(1) transacting

9

business in the United States, (2) doing an act in the United States, or (3) having an effect in the United States by an act done elsewhere." *In re Term Commodities Cotton Futures Litig.*, No. 12 CIV. 5126 ALC KNF, 2013 WL 9815198, at \*29 (S.D.N.Y. Dec. 20, 2013), *on reconsideration in part*, 2014 WL 5014235 (S.D.N.Y. Sept. 30, 2014) (citation omitted); *see also U.S. Titan*, 241 F.3d at 152, n.12 ("In determining whether personal jurisdiction exists over a foreign defendant who . . . has been served under a federal service of process provision, . . . a court should consider the defendant's contacts throughout the United States and not just those contacts with the forum."). Specifically in the context of Section 1782, courts in the Second Circuit analyze the "relationship between a § 1782 respondent's forum contacts and the resulting availability of the evidence." *In re del Valle Ruiz*, 939 F.3d at 530, n.12. An application for discovery should be granted if the discovery sought by the applicant "proximately resulted from the respondent's forum contacts." *Id.* at 530.

    In *U.S. Titan*, the Second Circuit exercised specific personal jurisdiction over a China-based defendant in a contract dispute with a New York-based entity—even where the defendant did not have substantial U.S. contacts and was not present in the U.S. at the time of the negotiations—because the defendant "'purposely availed itself' of the [U.S.] forum by negotiating and forming a contract with an American corporation located in New York," and by utilizing a Connecticut broker to facilitate negotiations with the New York-based plaintiff via fax and telex. *U.S. Titan*, 241 F.3d at 138, 152–53. The Second Circuit found that, by engaging in commercial negotiations, the defendant "should have foreseen the possibility of being 'haled into [an American] court' if a dispute were to arise out of the negotiations." *Id.* at 153. Here, similar to *U.S. Titan*, the parties facilitated negotiations of the Merger through communications that took place in, and/or were directed at, New York. *See* Proxy Statement at 27–32. Brookfield and its

outside legal counsel, Debevoise, engaged in negotiations with the Company and its New York representatives, Skadden and Goldman Sachs, and such negotiations were conducted both in person and via email. *See id.* In connection with the Merger negotiations, the Company also held management presentations with Brookfield at Skadden's offices in New York. *Id.* at 28. At the relevant time, Brookfield had multiple officers and directors based in New York, including Mr. Lorilla, who, as Chief Investment Officer, presumably participated in some or all of those discussions. Loft Decl. Exs. 4, 7, 8. The discovery sought, which includes information on the process and negotiations between Brookfield and the Company in reaching the Merger Price, results from these negotiations between the Company, Brookfield, and their representatives in New York. Thus, Brookfield's negotiations in, and directed at, New York are sufficient to establish personal jurisdiction. *See In re del Valle Ruiz*, 939 F.3d at 530; *U.S. Titan*, 241 F.3d at 152–53.

Moreover, Brookfield's participation in the Merger resulted in the de-listing of the Company from the NYSE, a New-York based stock exchange, which also provides a basis to exercise specific personal jurisdiction over Brookfield. This District recently held that activities related to securities or commodities that trade on a New York-based exchange subjects a foreign entity to specific personal jurisdiction, which satisfies Section 1782's "found in" requirement. *See Pfaff v. Deutsche Bank AG*, No. 20-mc-0025-KPF, 2020 WL 3994824, at *10 (S.D.N.Y. July 14, 2020) ("Many courts in this District have held that trading securities or commodities on an exchange in the forum subjects the defendant to specific personal jurisdiction in such forum").

In *Pfaff*, the court granted Section 1782 discovery of two foreign banks in connection with certain trading activity conducted on COMEX, a commodities futures exchange located in New York City. Although the banks' traders executed the trades from Germany, London, and Singapore—rather than from New York—the Court found that their activities trading securities on

an exchange based in New York was sufficient to exercise specific personal jurisdiction and subject the banks to discovery under Section 1782. *Id.* at *9–10. In granting the Section 1782 application, Judge Failla concluded that discovery related to the transaction "proximately resulted from the respondent's forum contacts" and so was properly subject to discovery under Section 1782. *Id.* Under *Pfaff*, this Court has an independent basis for exercising specific personal jurisdiction over Brookfield, satisfying the first statutory factor.

Outside of the Section 1782 context, this Court has held that the repurchase of shares by a foreign company listed on a New York-based exchange is sufficient to establish specific personal jurisdiction over the foreign owner of those shares, even where that owner was not present in New York at the time of the transaction. *See In re Aegean Marine Petro. Network, Inc., Sec. Litig.*, 529 F. Supp. 3d 111, 139 (S.D.N.Y 2021). In *Aegean*, the court found that the former CEO of a Greece-based company, which was listed on the NYSE, was subject to specific personal jurisdiction in this District for claims arising from the repurchase of his company shares, even though he was not present in New York at the time of the transaction. *Id.* Judge Buchwald explained:

> The reason for this conclusion is that the Repurchase, in the context of the Section 20A claim, was aimed at the United States. Aegean stock traded only on the NYSE and Aegean's transfer agent is located in Colorado. Unlike the business transactions that could readily occur entirely overseas, this one could not be effected anywhere other than in the United States. Facilitating a $100 million stock buyback of shares that trade on the NYSE, constituting over 20% of shares outstanding, created a "near certainty that United States shareholders . . . would be adversely affected" by [Defendant's] actions.

*Id.* (internal citations omitted). The court rejected the defendant's argument that the stock transaction at issue had no impact on United States shareholders because it was a private transaction between the defendant and the company. *Id.* at 140 ("Even though there was no direct United States shareholder on the other side of the transaction, the Repurchase inevitably affected

United States shareholders.").

Under these standards, Brookfield is "found in" the Southern District of New York. Here, Brookfield, as the buyer in the Merger, played a key role in the take-private transaction of the Company, which affected United States shareholders by resulting in the delisting of a publicly traded company from the NYSE. *See In re Aegean*, 529 F. Supp. 3d at 139. A federal court in California recently applied *Pfaff* in a Section 1782 proceeding for discovery for use in a Cayman appraisal proceeding arising out of the take-private transaction of Sina, a NYSE-listed company. The court held that the "found in" requirement was satisfied because the respondent's "transaction of Sina stock is sufficient for New Wave to reside or be found in the Southern District of New York," because, prior to the take-private transaction at issue, Sina was listed on the NYSE. Loft Decl. Ex. 9, *Oasis Focus Fund LP v. New Wave MMXV Ltd.*, No. 22-mc-80291-TLT, ECF No. 42 (Order) (N.D. Cal. March 8, 2023). The result should be no different here.

Similar to *Pfaff*, here, "the discovery material sought . . . largely relates to [the] Respondents'" activity on a securities exchange based in New York, and thus the Requested Discovery "proximately resulted from [the respondent's] forum contacts," even though the respondents did not conduct activities in New York. *See Pfaff*, 2020 WL 3994824, at *10. Under *Pfaff*, even if Brookfield's actions were initiated from a foreign country, that it is irrelevant. *See id.* at *10 n.8. Thus, this Court can and should exercise specific personal jurisdiction.

Moreover, that the Requested Discovery may be located outside of the United States does not change the analysis. The Second Circuit has held that documents located outside the United States are subject to discovery under Section 1782:

> [T]he text of § 1782 authorizes discovery pursuant to the Federal Rules of Civil Procedure. The Federal Rules of Civil Procedure in turn authorize extraterritorial discovery so long as the documents to

be produced are within the subpoenaed party's possession, custody,
or control. Hence § 1782 likewise allows extraterritorial discovery.

*Valle Ruiz*, 939 F.3d at 533; *see also Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1200 (11th

Cir. 2016) ("[T]he location of responsive documents and electronically stored information—to the

extent a physical location can be discerned in this digital age—does not establish a *per se* bar to

discovery under § 1782.").  Following the Second Circuit's decision in *Valle Ruiz*, courts in this

Circuit and elsewhere across the country have held that Section 1782 reaches evidence located

abroad.  *See, e.g.*, *In re Kuwait Ports Auth.*, No. 20-MC-00046-ALC, 2021 WL 5909999, at *11

(S.D.N.Y. Dec. 13, 2021) ("[I]n the off chance there are documents located abroad, so long as they

are in the possession, custody, or control of Citibank, the extraterritorial discovery is

permissible."); *see also Union Fenosa Gas, S.A. v. Depository Tr. Co.*, 20 Misc. 188 (PAE), 2020

WL 2793055, at *8 (S.D.N.Y. May 29, 2020) ("[T]he Court declines Egypt's request to limit

discovery to materials that are within the United States.").  While extraterritoriality is sometimes

a discretionary consideration in assessing whether the discovery sought is unduly burdensome

under the fourth *Intel* factor, there is no undue burden here.  *See* Section II.D., *infra*.

## B.    The Discovery Sought Is "For Use" in the Appraisal Proceeding.

Section 1782 application establishes the "for use" requirement by showing that the

requested discovery "will be *employed with some advantage* or *serve some use* in the [foreign]

proceeding—not necessarily [that it is] something without which the applicant could not prevail."

*Mees*, 793 F.3d at 298 (emphasis added).  Discovery need not be admissible to be "for use" in a

litigation, "[r]egardless of whether a foreign tribunal may deny admission of a document in the

future, or whether it already has."  *Sampedro v. Silver Point Cap., L.P.*, 818 F. App'x 14, 17 (2d

Cir. 2020), *as amended* (June 5, 2020).  Indeed, a Section 1782 petitioner is not required to

demonstrate that the information sought would be discoverable or admissible in the foreign

proceeding. *See Brandi–Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012). Instead, the district court considers "the *practical ability* of an applicant to place a beneficial document—or the information it contains—before a foreign tribunal." *In re Accent Delight*, 869 F.3d at 131 (emphasis in original); *see also Mees*, 793 F.3d at 298 ("for use" element satisfied if materials sought can "be employed with some advantage or serve some use in the proceeding").

Here, the Requested Discovery is intended for use in the Bermuda Appraisal Proceeding and will "be employed with some advantage or serve some use." *See Mees*, 793 F.3d at 298. The Bermuda Court will accept and consider any relevant evidence submitted by the parties, so long as it is lawfully obtained through Section 1782 and otherwise admissible. Duncan Decl. ¶¶ 35– 40. Indeed, the Bermuda Court will consider all facts and matters that may have a bearing on the determination of fair value. *Id.* ¶¶ 21–32. Where, as here, the parties dispute whether the Merger Price represents the fair value of the Company's shares, the Bermuda Court's inquiry often involves a consideration of evidence relating to whether the process that led to the transaction was fair. *Id.* ¶ 25.

The Requested Discovery from Respondents targets key information about both the price and terms of the Merger, and the process through which the price and terms were considered, negotiated, and ultimately agreed upon between Brookfield and the Company. Brookfield, as the buyer, was a major participant in that process.[3] Accordingly, the Requested Discovery will be "for

---

[3] Courts routinely grant Section 1782 applications seeking similar discovery from members of the buyer group and members of the board that approved a transaction that leads to appraisal litigation. *See, e.g.*, *In re Alpine Partners (BVI) L.P.*, 635 F. Supp. 3d 900, 909 (N.D. Cal. 2022) (granting 1782 application seeking documents and deposition from member of buyer group for Cayman Islands appraisal proceeding); *In re FourWorld Event Opportunities, LP*, No. 21-mc-00543-PKC, ECF No. 8 (S.D.N.Y. Aug. 8, 2021) (same); *In re FourWorld Event Opportunities, LP*, No. 21-mc-00283-RGS, ECF No. 6 (D. Del. July 29, 2021) (same); *FourWorld Event Opportunities, LP v. Dodds*, No. 1:22-mc-00018-TNM, ECF No. 8 (D.D.C. Feb. 14, 2022) (granting 1782 application seeking discovery from member of Special Committee that approved merger).

use" in the Appraisal Proceeding given its relevance to the Bermuda Court's determination of the fair value of Petitioner's shares in the Company.

### C.    Petitioner Is An "Interested Person."

"No doubt litigants are included among … the interested persons who may invoke § 1782." *Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*, 785 F. Supp. 2d 434, 438 (S.D.N.Y. 2011) (quoting *Intel*, 542 U.S. at 256). Because Petitioner is a party to the Appraisal Proceeding, Duncan Decl. ¶¶ 3, 11, and is thus an "interested person" under Section 1782, all of the statutory elements are satisfied here.

## II.    THE *INTEL* FACTORS WEIGH IN FAVOR OF GRANTING DISCOVERY.

Once the statutory threshold requirements of Section 1782 are met, a district court considers, in its discretion, whether to order the requested discovery. To do this, the district court looks to the four "*Intel* factors." *See Intel*, 542 U.S. at 264; *see also Mees*, 793 F.3d at 298. Each of the *Intel* factors is discussed below and weighs in favor of granting the Application.

### A.    *Intel* I: Respondents Are Non-Participants in the Appraisal Proceeding.

The first *Intel* factor asks whether the party from whom discovery is sought is a party to the foreign proceeding because "when the person from whom discovery is sought is a participant in the foreign proceeding, the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Intel*, 542 U.S. at 264. Here, Respondents are not parties in the Appraisal Proceeding and therefore will not be subject to party discovery in the Appraisal Proceeding. Duncan Decl. ¶ 33.

Under the first *Intel* factor, it is not dispositive that Brookfield was the Buyer in the Merger. After the Merger, the Company became an indirect wholly owned subsidiary of Brookfield and thus, although the Company is a party to the Appraisal Proceeding, Respondents are not. *Id.* ¶¶ 5–

7. In similar circumstances, courts in this Circuit have held that discovery is appropriate.[4]  Indeed, even where some of the requested discovery may be available from a party to the foreign proceeding, courts in this Circuit routinely grant Section 1782 discovery.  *See, e.g.*, *In re Polygon Global Partners LLP*, 21 Misc. 364 (ER), 2021 WL 2117397, at *8 (S.D.N.Y. May 25, 2021) (finding Section 1782 discovery was not barred in connection with a Spanish proceeding challenging a take-private acquisition, even if "some of the information sought is available directly through [the acquired or acquiring entities]"); *In re Top Matrix Holdings Ltd.*, 18 Misc. 465, 2020 WL 248716, at *5 (S.D.N.Y. Jan. 16, 2020) (ordering discovery even when the evidence was likely in the possession of a parent company that was subject to the jurisdiction of a foreign court); *In re Porsche*, 2016 WL 702327, at *8 (finding the first *Intel* factor to be in favor of granting 1782 application where petitioner "may be able to obtain from the German Plaintiffs documents" but there was "no indication that the disclosures would be sufficiently broad to give [petitioner] all that it seeks in this Section 1782 proceeding"); *In re Application of Auto-Guadeloupe Investissement S.A.*, No. 12 MC 221(RPP), 2012 WL 4841945, at *5 (S.D.N.Y. Oct. 10, 2012) (rejecting argument that "*Intel* precludes § 1782 discovery of parties participating in the underlying

---

[4] *See, e.g.*, *In re Evenstar Master Fund SPC*, 20 Misc. 418 (CS) (JCM), 2021 WL 3829991, at *11 (S.D.N.Y. Aug. 27, 2021), *aff'd*, 2021 WL 5498283 (S.D.N.Y. Nov. 23, 2021) ("Mo [the adversary in the foreign proceeding] and each Respondent are not one in the same simply because of Mo's executive positions, and as New York not-for-profit corporations, Respondents are not within the Grand Court's jurisdiction," thus the first *Intel* factor weighed in favor of discovery); *In re Top Matrix Holdings Ltd.*, 18 Misc. 465, 2020 WL 248716, at *5 (S.D.N.Y. Jan. 16, 2020) ("Credit Suisse USA and Dougan have separate legal personalities" and therefore the fact that their Swiss-based corporate parent was a participant in the underlying foreign proceeding was not a relevant consideration); *In re Kidd*, No. 20-CV-00800 (KAD), 2020 WL 5594122, at *3–5 (D. Conn. Sept. 18, 2020) (it was proper to grant a Section 1782 application against "officers, directors, or indirect controlling parties" of parties to the underlying foreign proceeding); *see also In re Belparts Grp., N.V.*, No. 21-MC-0062 (VAB), 2021 WL 4942134, at *4 (D. Conn. Oct. 22, 2021) (collecting cases) ("Discovery under § 1782, however, is not necessarily inappropriate where it is sought from a U.S.-based party that is affiliated with a foreign company sued in an international tribunal.").

international proceeding"); *see also In re FourWorld Cap. Mgmt. LLC*, No. 23-1460-GBW, 2024 WL 1637400, at *4 (D. Del. Apr. 16, 2024) ("[T]he law does not require that the requested discovery be unavailable from any party to the foreign proceeding.").

Moreover, although Brookfield is incorporated under Bermuda law, the first *Intel* factor weighs in favor of discovery even when a respondent may be subject to third-party discovery procedures in the foreign jurisdiction. Making such a determination "would be to go beyond a straightforward assessment of whether [the respondent] is actually or functionally a party to the [foreign] Proceedings, and instead require the Court to assess how the [foreign court] might hypothetically apply its third-party discovery rules." *In re Polygon Glob. Partners LLP*, No. 21 MISC. 364 (ER), 2021 WL 2117397, at *8 (S.D.N.Y. May 25, 2021); *see also In re Refinería de Cartagena S.A.S.*, No. 23 MISC. 455 (JPC), 2024 WL 95056, at *9 (S.D.N.Y. Jan. 8, 2024) ("Where, as here, the Section 1782 respondent is not a direct party in the foreign proceeding, courts in this District have found insufficient bare representations that the Section 1782 applicant could hypothetically obtain the requested materials through third-party disclosure mechanisms.").

Because Respondents are not direct parties to the Appraisal Proceeding, this first *Intel* factor weighs in favor of granting the Application.

**B.**    ***Intel* II: The Bermuda Court Will Be Receptive to the Requested Discovery.**

The second *Intel* factor requires courts to consider whether the "nature, attitude and procedures" of the foreign tribunal indicate that it is receptive to Section 1782 assistance. *Brandi–Dohrn*, 673 F.3d at 81. In the Second Circuit, courts "should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782 . . . as embodied in a forum country's judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures." *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995) . "Absent specific directions to the contrary from a foreign forum, the statute's

underlying policy should generally prompt district courts to provide some form of discovery assistance."  *Id.* at 1102; *see also In re Porsche*, 2016 WL 702327, at *8 ("The law on this factor is clear: 'District courts have been instructed to tread lightly and heed only clear statements by foreign tribunals' that they would reject Section 1782 assistance.").  Therefore, there is a strong presumption that foreign tribunals will be receptive to evidence obtained under Section 1782, and thus the burden is placed on the party opposing discovery to show that a foreign tribunal would reject the evidence obtained through Section 1782.  *See In re Al-Attabi*, No. 21-MC-207 (VSB) (RWL), 2022 WL 229784, at *8 (S.D.N.Y. Jan. 26, 2022) ("Second Circuit case law places the burden on the party opposing discovery [under Section 1782] to show that a foreign court would *not* be receptive to this assistance.") (emphasis in original) (cleaned up).

The Bermuda Court will consider any evidence that has a bearing on determining the fair value of a company's shares.  *See* Duncan Decl. ¶¶ 21–25.  Indeed, as set forth in the Duncan Declaration, it is common for litigants in Bermuda to use Section 1782 to obtain evidence located in the United States.  *See id.* ¶¶ 35–36.  According to Petitioner's Bermuda counsel, based on his professional experience as a Bermudian lawyer, the Bermuda Court will be receptive to evidence obtained through Section 1782.  *Id.* ¶ 35.  Moreover, Bermuda courts have held that a Section 1782 application can be used to obtain discovery for use in Bermuda proceedings.  *See id.* ¶ 36.[5]

In the United States, multiple courts have recognized that Bermuda courts are receptive to evidence obtained through Section 1782.  *See, e.g.*, *In re Winston Wen-Young for Assistance before a Foreign Tribunal*, No. 21-cv-8627, ECF No. 19 (D. N.J. June 15, 2021) (granting modified Section 1782 application for discovery to be used in Bermudian proceedings); *Am. Patriot Ins.*

---

[5] Further, courts in the Cayman Islands, to which Bermuda courts look to as persuasive authority, have accepted evidence obtained in the United States under Section 1782, both generally and in appraisal cases.  Duncan Decl. ¶ 37.

*Agency, Inc. v. Hendricks*, No. 10-CV-00985, ECF No. 8 (N.D. Ill. Feb. 19, 2010) ("This matter coming to be heard upon [Petitioners'] Petition for Discovery Litigation under 28 U.S.C. § 1782 . . . is granted."); *see also Letter of Request for Examination of Witness Out of Jurisdiction, Am. Patriot Ins. Agency, Inc. v. Hendricks*, No. 10-CV-00985, ECF No. 1-3 (N.D. Ill. Feb. 12, 2010) ("Now I . . . a Judge of the Supreme Court of Bermuda hereby request . . . you will be pleased to summon the said witness . . . . It is the understanding of this court [the Supreme Court of Bermuda] that the granting of assistance is authorised by your federal rules of civil procedure."); *In re Application of Hill*, No. M19-117 (RJH), 2005 WL 1330769, at *1 (S.D.N.Y. June 3, 2005) (rejecting motion to quash 1782 subpoena for discovery to be used in Bermuda and Hong Kong).

Accordingly, the second *Intel* factor weighs in favor of granting the Application.

## C.  *Intel* III: Petitioner Is Not Circumventing Foreign Proof-Gathering Restrictions.

The third *Intel* factor looks to "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States."  *Intel*, 542 U.S. at 265.  In *Intel*, the Supreme Court expressly rejected the notion that Section 1782 requires that the evidence be discoverable in the foreign proceeding itself.  *Id.* at 261 ("A foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions—reasons that do not necessarily signal objection to aid from United States federal courts.").  This factor thus counts against discovery only in the extreme circumstances where a Section 1782 application would circumvent "[p]roof-gathering restrictions," that is, "rules akin to privileges that *prohibit* the acquisition or use of certain materials," *Mees*, 793 F.3d at 303 n.20 (emphasis in original), or "discovery that trenched upon the *clearly established* procedures of a foreign tribunal."  *Euromepa*, 51 F.3d at 1099 (emphasis in original).  No such circumstance is present here.

20

Here, in the Appraisal Proceeding, the Bermuda Court will issue a Directions Order that will set forth the scope of discovery. The default discovery rule for appraisal proceedings in Bermuda is "general discovery," meaning that the Company will be compelled to produce all "documents which are or have been in their possession, custody or power relating to matters in question in the action." Duncan Decl. ¶ 29. A more limited scope of discovery is only ordered in "exceptional circumstances," which are not present in the Appraisal Proceeding. *Id.* ¶¶ 31–32.

Moreover, even if the Bermuda Court were to order a proof-gathering restriction, such a restriction would not apply to Respondents. *See In re Application of Oasis Core Invs. Fund Ltd.,* No. 23-mc-402 (SHS), 2024 WL 472984, at *2 (S.D.N.Y. Feb. 7, 2024) ("More generally, even if the Directions Order were to restrict discovery, such a restriction would apply to [the] parties in the Bermuda proceeding. There is no evidence in this record suggesting that the Directions Order would govern or prohibit any potential discovery from non-party [respondent]."). There is no requirement that Petitioner must wait for the Bermuda Court to issue its Direction Order before seeking discovery from non-parties to the Appraisal Proceeding pursuant to Section 1782. *See id.* (rejecting argument that petitioner acted in bad faith by bringing Section 1782 application prior to a Directions Order in Bermuda and finding third *Intel* factor weighed in favor of petitioner).

Therefore, the third *Intel* factor weighs in favor of granting the Application.

### D.    *Intel* IV: The Subpoena Is Not Unduly Burdensome.

The requested discovery is not "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. The standard is substantially the same as in ordinary domestic civil litigation under the Federal Rules of Civil Procedure. *Valle Ruiz*, 939 F.3d at 532–33 ("[T]he text of § 1782 authorizes discovery pursuant to the Federal Rules of Civil Procedure"); *see also In re Bayer AG*, 146 F.3d 188, 195 (3d Cir. 1998) ("The reference in § 1782 to the Federal Rules suggests that under ordinary circumstances the standards for discovery under those rules should also apply when discovery is

21

sought under the statute.").

*First*, Petitioner only seeks evidence that is relevant to the issues in the Appraisal Proceeding, namely, evidence related to the Merger and the Company's valuation. Petitioner's Bermuda counsel confirms that the discovery sought by Petitioner is relevant to the key issues in the Appraisal Proceeding and "will be used in relation to the following critical issues in the Appraisal Proceeding, including the negotiation of the Merger and Merger Price, which Respondents participated in, and the process that led to the Merger, both of which are highly relevant to the Bermuda Supreme Court's determination of fair value." Duncan Decl. ¶ 42.

*Second*, the discovery requests are temporally limited to the period in which the Merger was being contemplated, negotiated, and executed. *See, e.g.*, *In re Oasis Core Invs. Fund Ltd.*, No. 23-MC-402 (SHS), 2024 WL 472984, at *3 (S.D.N.Y. Feb. 7, 2024) (granting Section 1782 application seeking discovery over a 17-month period for use in a Bermuda appraisal proceeding).

*Third*, there is no undue burden in this case in producing documents located abroad. *See supra* Section II.A. The Second Circuit has expressly recognized that Section 1782 does not have a geographical restriction and "authorize[s] extraterritorial discovery so long as the documents to be produced are within the subpoenaed party's possession, custody, or control." *Valle Ruiz*, 939 F.3d at 533. In any event, the documents sought will principally be in electronic form and are likely accessible from the United States. *See Matter of Degens*, No. 20-MC-237 (JGK) (RWL), 2020 WL 4252725, at *5 (S.D.N.Y. July 24, 2020) ("Most if not all the records sought should be available electronically and therefore of little burden to access and produce. Accordingly, requiring production of documents no matter where they are deemed to reside is appropriate in this case."); *In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, No. M19-88 (BSJ), 2006 WL 3844464, at *8 (S.D.N.Y. Dec. 29, 2006) ("The fact that the documents are located abroad,

itself, is of little concern. They can easily be shipped to McKinsey's headquarters in New York.").

Courts in this District have accordingly ordered the production of documents located outside the

United States. *See, e.g.*, *Kuwait Ports Auth.*, 2021 WL 5909999, at *11; *Union Fenosa Gas, S.A.

v. Depository Tr. Co.*, 2020 WL 2793055, at *8.

 *Fourth*, a deposition is not unduly burdensome here.  Courts in this District have typically

been "generous" in granting Rule 30(b)(6) depositions in Section 1782, even in cases with "tight

schedule[s]" and other potential difficulties.  *See, e.g.*, *In re Porsche*, 2016 WL 702327, at *13 (it

was "relatively evident from precedent in this circuit generous to Section 1782 applicants that there

was a reasonable chance [respondents] would have to produce documents and prepare witnesses

on a short timetable").[6]  Here, a deposition of Respondents is appropriate and will significantly aid

the Bermuda court in understanding complex, relevant material.[7]

 *Finally*, Petitioner is willing to meet and confer with Respondents to address any remaining

concerns about undue burden.  If the Court finds merit to any scope objections from Respondents,

"it is far preferable for a district court to reconcile whatever misgivings it may have about the

impact of its participation in the foreign litigation by issuing a closely tailored discovery order

rather than by simply denying relief outright."  *Euromepa*, 51 F.3d at 1101.

---

[6] *See also In re Mother's Milk, Inc.*, No. 5:20-mc-00004-M, 2020 WL 2514315, at *5 (S.D.N.Y.
May 15, 2020) (permitting 30(b)(6) deposition because it would "provide helpful evidence to the
[foreign] court in moving the case forward."); *In re Accent Delight*, No. 5:20-mc-00004-M, 2018
WL 2849724, at *5–6 (S.D.N.Y. June 11, 2018) (same).
[7] Moreover, U.S. deposition transcripts are admissible in proceedings before Bermuda courts.
Duncan Decl. ¶¶ 39–40 (discussing *Lyxor*'s treatment of U.S. deposition transcripts).

## **CONCLUSION**

Petitioner respectfully requests that the Court grant its Application.

Dated: February 11, 2025

By:  */s/ Duane Loft*

**PALLAS PARTNERS (US) LLP**
Duane L. Loft
Brianna Hills Simopoulos
Mark C. Davies
Ashley Mullen
75 Rockefeller Plaza
New York, NY 10001
Telephone: (212) 970-2300
Duane.Loft@pallasllp.com
Brianna.Simopoulos@pallasllp.com
Mark.Davies@pallasllp.com
Ashley.Mullen@pallasllp.com

*Attorneys for Petitioner*